Thank you, Your Honor, and may it please the Court. Ailey Proctor on behalf of Plaintiffs' Appellants. I would like to reserve five minutes for rebuttal, if I may. At the age of 18, adults in this country can be called upon to bear arms to defend their country. Yet in California, the same 18-year-olds are barred from acquiring arms to defend themselves, their families, and their homes. The only meaningful exception, which allows hunters to obtain long arms suitable for hunting, is burdensome and utterly irrational. Yet the District Court held that California's age-based ban does not even implicate the Second Amendment. It acknowledged that the long arms covered by the ban are arms within the meaning of the Second Amendment. And it did not question circuit precedent that the right to acquire arms lies at the core of the Second Amendment. Instead, it held that the 18-, 19-, and 20-year-olds have no Second Amendment right to acquire arms. It did so despite the plain text of the Second Amendment protecting the right of the people, and despite Heller's clear holding that the people includes all members of the political community and not an unspecified subset. And it did so despite the Second Amendment's announced purpose to prevent the elimination of the militia, which uncontradicted evidence shows included 18- to 20-year-olds at the time of ratification. The District Court relied on a long-standing tradition to justify the ban. That long-standing tradition is nothing more than an illusion. It rests on several categories of evidence, none of which support removing 18- to 20-year-olds from the ambit of the Second Amendment altogether. Can I, counsel, can I ask just a basic question as we get out of here? Get going on this. What is prohibited? These regulations are incredibly obtuse, very difficult to understand. And maybe, and I'll ask California and they can help correct me. But my understanding is as to long guns, they're prohibited for 18- to 21-year-olds, except that they can be given as a gift, they can be gifted by a parent or a grandparent so long as, or purchased so long as a hunting license is obtained by the individual first. Is that a fair rendition of what the, I know there's also the military and the police officer, but the realistic prohibitions, is that an accurate representation as to long guns? Your Honor, the hunting license exception is actually narrower because it does not cover semi-automatic center fire rifles. I understand. I'm just, I'm trying, that's why I'm trying to clear these separately. But as to long arms, and actually I'll ask the same question. Is there, can you parentally gift to semi-automatic, for semi-automatic center fire rifles as well? But as to long arms, you could, an 18- to 20-year-old could get possession, ownership of a gun, of a long arm, if it were, if they obtained a hunting license and went to an FFL and purchased it, or they were gifted it by a parent. That's correct, Your Honor. Long arms apart from semi-automatic center fire rifles, that is correct. And just to be clear, for long arms that are gifted by a parent, they would also have to have a hunting license before the parent could gift that to them, or is that not accurate? Your Honor, I actually do not know whether a hunting license is required for a gift. So I will, I can confirm that. That's fine, and the government can, but as to semi-automatic center fire rifles, is there a parental gift option? My understanding was there was not. Your Honor, that is correct. And the other issue with that option is, of course, that the, it conditions an adult's right to exercise their second, ability to exercise their Second Amendment right effectively on parental consent. And that is... But wait, hold on. As to long guns, is there even a parental consent requirement for an 18 to 21 year old to obtain? I didn't understand that they could even be gifted a semi-automatic center fire rifle by a parent. That's correct, Your Honor. Okay, so you're just saying the parental consent is required for 18 to 21 year olds for long guns. Or is one of the exemptions, if you will. That's correct, Your Honor. Okay. Thank you. That's very helpful. I apologize for that, but to take up your time. But can we start, let me just start with long guns. So you can get a long gun apparently, either through a parent or buy it directly if you're 18 to 20, if you go get a hunting license. Why is it that, well, why is a hunting license not consistent with kind of a historical precedent of requiring firearms to be managed with expertise and training? Your Honor, there may be a historical precedent for requiring firearms to be managed with expertise and training, but the hunting license requirement in particular is problematic for several reasons. The first is that it does not advance an interest in safe firearms handling in the same way that a firearm safety certificate does. The firearm safety certificate, which is required for all firearm purchases unless you have a hunting license, focuses exclusively on safe firearm handling. By contrast, the hunting license requirement does not focus exclusively on safe firearm handling. It's an 8 to 10 hour course that predominantly covers issues that are of no interest to someone who is seeking to acquire a firearm for self-defense. So for example, wildlife management. And an individual can pass the hunting safety course with a 33% score on the firearm safety question, the final exam. So it really does not seem to fit within a historical tradition of any sort of historical tradition of firearm safeties, first of all. And secondly, it's very burdensome. As the record reflects, there are not a large number of courses that are available. Sometimes you may have to wait a month or more in order to attend a course. Let me ask you a question about that. Are you bringing a facial challenge or an as-applied challenge? Because your complaint does mention an as-applied challenge, but I didn't really read that in any of the briefing. And so how would you characterize your challenge to both of these laws? Your Honor, we are challenging the laws as facially unconstitutional because the relevant group for the court to consider for the purposes of the facial challenge are the young adults, the law-abiding adults under the age of 21. You're not bringing, just to clarify, you're not bringing an as-applied challenge specifically as to the long guns? No, Your Honor. Okay. And the reason why I think that's important is because a lot of what you just started to talk about, about the availability of the courses and how hard it is to get the courses, that seems to me to be more appropriately considered under an as-applied challenge. Correct me if I'm wrong, but it seems like a facial challenge, we look to the regulation, and what the regulation says is you have to have a hunting license. And... Your Honor... Go ahead. Your Honor, I disagree with that because our position is that this law is facially unconstitutional. So when you look at the regulation of the second step of this court's Second Amendment analysis, and if you're looking specifically at the requirement to obtain a hunting license, that burdens conduct that is at the core of the Second Amendment. Well, you're right. You're right. But as applied, it has to be in all circumstances. So you're asking us to say that just requiring a hunting license, we don't know what the hunting license is. What if it were a two-hour hunting license class? I mean, that might be burdensome. It might not be a 10-hour hunting license. But once you get into, hey, it turns out it's a two-week class. You have to drive three hours. You have to stay in a hotel. That seems to me to be... And they're not available. That seems to me to get into an as-applied challenge where they're using the facial requirement. This is what we had in Hawaii, the Young case. They said you could go get an exemption. You could get a permit. But then they never gave out any permits. Well, it's not as... I mean, you can argue about whether it's wrong that you have to get a permit under what conditions. But if they're not giving them out, or if they're not providing the opportunity to get a hunting license, that seems to fall within an as-applied challenge. Yes, Your Honor, and I certainly agree with that. But my point is that it still supports a facial challenge as well because the state is still required to justify that burden on the core Second Amendment rights to acquire firearms. And here, the state simply has not justified that burden, even under intermediate scrutiny. In order to justify a burden like a requirement to obtain a hunting license under intermediate scrutiny, the state needs to show two things. First, it has to show concrete evidence that it materially advances the state's asserted interest. And here, the hunting safety course does not do that for two reasons. The first is that the state's reason for placing this burden on 18- to 20-year-olds in particular is supposedly, and we don't believe that there's concrete evidence of this, but it's supposedly that they are more prone to violence and that they are more impetuous. Well, you can train someone in firearm safety until he's blue in the face. That's not going to get rid of any sort of tendency towards impetuosity or violence. But then secondly, as I mentioned, the hunting license and the hunting safety class is an alternative to the firearm safety certificate that all adults are required to obtain before purchasing a firearm. And that certificate is easier to get, but actually more concretely advances the state's interest in firearm safety. Oh, go ahead. Finish up with your second. Well, the second thing that the state must show is that their requirement does not burden substantially more conduct than is reasonably necessary to advance its interest. And here, there's absolutely no evidence that the state considered less restrictive alternatives, which under McClellan, it was required to do. Assuming strict scrutiny applies, you're saying. No, Your Honor. Even under intermediate scrutiny, less restrictive alternatives. Okay, I see. You're saying less restrictive alternatives have to be considered, but it doesn't have to be the least restrictive. That's correct, Your Honor. We are not saying it has to be the least restrictive alternatives. But here, the state had a less restrictive alternative staring it in the face. When we're talking specifically about the hunting license exception, it was the firearm safety certificate. So that's the first issue. But then the second issue is that also under McClellan, the state needs to show that a substantial portion of the conduct that is burdened actually advances the state's interest. And here, the state's justification for targeting 18 to 20-year-olds with this burden in particular is scientific studies in the firearm safety, I'm sorry, crime statistics that show this impetuosity or propensity to violence. But they only show that a very small portion of 18 to 20-year-olds, all of whom bear this burden, only a small portion of them present the threat that the state is attempting to direct. Is there evidence in the record as to what percentage of 18 to 20-year-olds commit violent crimes or are arrested for violent crimes? Yes, Your Honor. There is evidence in the record as to what percentage, and it's a very low percentage. It's, I think, one quarter of one percent if you compare. Let me clarify. Where is that in the record? Because that's the number I came up with, but I came up with public figures, and I just didn't know if that existed in the record. Your Honor, you are correct that the statistics from which we drew that number in our briefs are from publicly available sources rather than the record. But the record does include the FBI crime statistics from a few years ago, and those are consistent with the numbers that are used in our briefs. But to be clear, we don't believe that the court is required to restrict itself to the district court record in making these sorts of determinations in legislative facts. I'm with you on that. Let me move quickly to the Reconstruction era. That's where we start to get some laws that are passed here, and the Fifth Circuit relied heavily on this. And so there's 21 states that prohibited a sale of a particular firearm of any nature to the youth going back to the 1800s. I have a more fundamental question about that. How relevant is that information? I guess we have to consider it to some degree given Heller looked at it. But as I look at this, no federal amendment was incorporated. There wasn't even an idea that they would be incorporated as to the states until 1925. And so these states were purportedly in the 1800s adopting laws that may or may not have been consistent with their state constitutions. And so how can we and to what degree should we consider these state laws that existed in the 1800s for purposes of determining the contours of the Second Amendment right, given that? You're right, Your Honor, and you've articulated very well one reason why those state precedents are less probative. But even more fundamentally than that, the right that is incorporated against the states under McDonald is the right that is protected by the Second Amendment. So the relevant period that the court should be looking to for the understanding of the scope of the right that the Second Amendment protects is the period surrounding the ratification of the Second Amendment, not the period surrounding the ratification of the Fourteenth Amendment. Let me stop you just for a moment. To what extent did state constitutions have an equivalent of the Second Amendment in them? Because it doesn't necessarily have to be the federal Second Amendment that the states are dealing with. I think the answer is many. Do you have any sense of that? Yes, Your Honor. Many states did, in fact, have a state constitutional provision that was similar to the Second Amendment. And I do think it's legitimate for the court to look to that precedent as the court did in Heller for confirmation of what the founding era evidence reveals about the scope of the Second Amendment. But here, all of the founding era evidence supports the conclusion that 18 to 20-year-olds partook of the right to keep and bear arms. And that's because the announced purpose of the Second Amendment was to prevent the elimination of the militia, of which 18 to 20-year-olds were universally understood to be members. Well, it seems to me, I think there's something in the record that even 16-year-olds were subject to being called up by militia. But being subject to being called up by militia, it seems to me, is different than the issue of whether or not there could have been or were restrictions on the use of arms by young adults, 18 to 20-year-olds. There's a difference between being subject to being called up to defend your community, on the one hand, and whether or not there could be restrictions on the sale and the use of weapons for young adults, thereby taking it outside of the Second Amendment, it seems to me, at the time of the ratification. Judge Stein, it should be clear that we're not simply trying to infer a right from a duty here. The question is, the Second Amendment protected the right to keep and bear arms, in part, in order to prevent the elimination of the militia. Whose rights to keep and bear arms needed to be protected to advance that purpose? And the answer is 18 to 20-year-olds, who, again, were universally understood to be part of the militia, unlike 16-year-olds. And, Your Honor, I see that my time is running low. I mean, I don't want to cut off questions. If panel members have questions, go ahead. Yes, of course. If there are no others. We're only at the end now. We're opening up an area of discussion. But it seems to me to require a certain amount of hubris on everyone's part to suggest that they could parse the difference between public opinion in the 1850s or the intention of lawmakers in the 1850s and the intention of lawmakers in the 1790s. We're not historians. We're jurists. Your Honor, what Heller and McDonald clearly require is a very careful examination of the history. And the history in 1791 is simply different from the history in 1868. It's only in 1868 that you start to see age-based restrictions on the acquisition of certain, and I should be clear, a smaller subset of arms than in the regulations before the court. One technical question. Are you challenging just the regulations governing long guns and semi-automatic center rifles or also regulations for handguns as well? We are not challenging the ban on handguns. Okay. We'll give you time for rebuttal. Ms. Rosenberg. Thank you, Your Honors, and may it please the Court. I am Deputy Attorney General Jennifer Rosenberg, and I'm appearing on behalf of the State Defendants. I will certainly respond to several of the points that Plaintiffs' Counsel just made, but first I'd like to address three points demonstrating why the Court should affirm the District Court's denial of the preliminary injunction here. And the first of those points actually goes to the very first question asked by Judge Nelson here, and that is the scope of Section 27510, its provisions, and what it does and does not do. So Section 27510 is, as we briefed, a measured, common-sense regulation of sales and other firearm types of transfers conducted through federally licensed firearms dealers, and it's aimed at increasing public safety and reducing firearms violence by limiting access to some types of firearms to those Californians between the ages of 18 and 20 who have appropriate training, maturity, and, in the case of law enforcement personnel or members of the armed forces, specific oversight. It is not a categorical ban on possession or use of any type of firearm. Hold on. Let me ask you about that, because do you agree with the representations that Counsel made? It seems to me that long guns – can you confirm long guns can be obtained either through parental gift or through obtaining a hunting license? That is correct, and that's actually not the only circumstance under which long guns can be acquired. In addition to that, long guns can be acquired through an operation of law transfer. That could be inheritance, or it also could be transmutation of property, meaning passage of property through spouses. I do want to correct the record and state that a plaintiff's position is not correct. Parents are able to gift to their adult children under the ages of 21 semi-automatic centerfire rifles. That's actually a very key point to me, and I don't see it in the regulations. So you're going to have to walk me through that, because I spent a fair bit of time trying to figure this out. 27-545 specifically says all transfers must be made through a FFL, and that doesn't seem to exempt parental transfers of semi-automatic rifles. So how are you getting there? There are exemptions that are not explicitly stated in Section 27-510. There are actually many exemptions that are circumstances under which transfers of firearms, whether those are sales or other types of transfers, such as gifts in between parents and children, are not required to be conducted through a federally licensed firearms dealer. What's interesting about that is the regulation, I don't have it handy, that allows for parental gifts specifically says only handguns and long guns. So point me to the regulation that says a parent can gift a semi-automatic centerfire rifle to a young adult ages 18 through 20. Sure, so it should be Penal Code Section 27-875. It doesn't use the term parent, which may be causing the court's confusion, and I do acknowledge that the laws are a bit Byzantine, so it takes a little bit of investigation in order to find these. But Section 27-875 states that Section 27-545, which is the provision that requires sales and transfers to go through licensed firearms dealers, does not apply to the transfer of a firearm by gift, bequest, intestate succession, or other means from one individual to another if certain requirements are met. And one of those requirements is that the transfer is between members of the same immediate family. The term same immediate family is then defined in the Family Code, and it refers specifically to parents and grandparents. There are no other relations that are considered immediate family members. Although, again, a transmutation of property in between spouses means that spouses are also able to gift any type of firearm to their adult spouse. Okay, and just to be clear, I'll have to go back and walk through these. That is different than the loan. There's a separate loan provision that applies where a parent can loan a firearm to a youth for up to 30 days. But you're talking about a true transfer can occur from a parent to an adult, even of a semi-automatic centerfire rifle. That is right, and even including a handgun, actually. Right, well, yeah, handguns were already – there wasn't a question on handguns or long guns. Okay, so we could go a lot of different ways, but let's – well, first of all, do you – is the government's position that there's just no Second Amendment right for anyone under the age of 21? The government hasn't taken that position in this litigation, and the court doesn't actually need to reach that question in order to decide this case. The government's position is that the particular firearms regulations that are imposed here are permissible under the Constitution, either because they are consistent with longstanding prohibitions on access to firearms for certain individuals, or because they are consistent with longstanding regulations on access, which don't necessarily mean regulations of all firearms or limitations on access to all firearms. And in addition, even if the court were to decide that there is a Second Amendment right and that it is being impinged by Section 27.5.10, we would still contend that the law would survive intermediate scrutiny, which is the highest standard of scrutiny that has been applied in any age limitations case in any federal court, whether appellate or district court. Well, that's a nice distinction, but I mean, part of that question depends on whether it's a court right. And I mean, if it were a flat-out ban on owning some of these guns, and that's what we'll have to determine, then I think strict scrutiny would apply under Heller, arguably. Right, so as the court noted, the distinction there is whether or not it would be a categorical ban, and it certainly is not a categorical ban on any category of weapons. Let's take apart the parental consent, because to me, so there's no, you can't go, you cannot, the only option for getting a semi-automatic centerfire rifle for a young adult is through a gift. What I'm hearing from you is through a gift from a parent, right? Gift, bequest, inheritance, or transfer from a sponsor. Right, but they cannot go to an FFL and purchase one, even if they got a hunting license. That's correct, except for those categories of 18 to 20-year-olds who may be active members of law enforcement or the armed forces. They are able to walk in and purchase. I understand. I don't view those as particularly hopeful. I mean, police officers, you can't become a police officer until you're 21 anyway in most cases, and it seems a little bit disingenuous to say that the only people who have the second-member right are those who are in active military. I mean, that's a pretty strong prohibition. But setting that aside, the Seventh Circuit in the Easel case did address parental notification, which seems like the most analogous to what you're suggesting or what I'm understanding California to be, at least as to semi-automatic rifles. And they were concerned. They said, look, there's some language in there that suggests they would not have upheld the restriction, Chicago's restriction, if it had just been a parental consent. They relied upon the fact that there was a separate individualized inquiry that could be made, because if a young adult didn't want to go to their parent and get consent or couldn't or didn't have parents, they could go to a department chief at the police department who would run a background check. That is not a separate exemption that is part of the California law. Is that right? That's correct. And I believe that the court is referring to the Horsley v. Treme case. Oh, I apologize. No, you're right. Wrong Seventh Circuit case. Thank you. Right. So, again, parental consent is not actually a specific provision, and there isn't a similar exemption for circumventing all of the provisions of Section 27.5.10 by applying to a director of any particular bureau. That is correct. However, all 18- to 20-year-olds who are not otherwise prohibited from receiving firearms because they are, for example, a felon or they've been adjudged to be mentally ill, all law-abiding, responsible 18- to 20-year-olds are able to take a hunter education course, which is a very minimal imposition, and then purchase any long gun that is not a semiautomatic centerfire rifle. I'm just talking about the semiautomatic centerfire rifles and how those can be obtained. I mean, admittedly, California's restriction seems to be more intrusive than what was issued in Horsley. I mean, there's no individualized exception. And transferring from a parent to a child, it seems to be much more intrusive than just a parental consent. I mean, I think a parent would be much more willing to have a discussion with their child and sign a parental consent form, whereas actually going down and purchasing a firearm and going through the logistics of transferring it, assuming that's possible, as you've suggested, as to centerfire semiautomatic rifles, that seems to be far more intrusive than what Horsley was dealing with. So a note about Horsley and about the ID requirement in Illinois. I do agree that it may be incrementally more burdensome for a parent to have to do the actual purchasing or acquiring of a firearm to gift or bequeath to their child. However, in Illinois, the ID requirement was necessary even for possession of firearms in the first place. And here, as distinguished from that law, there's simply no law that limits possession of any type of firearm for anybody over the age of 18. Come on. That's a little bit disingenuous. We're not limiting possession. We just won't let you buy one. I mean, explain to me how that works. So certainly I would acknowledge that in order to possess a firearm, you have to acquire it. But there are, I'm sure, 18 to 20-year-olds who already possess semiautomatic centerfire rifles, who were able to acquire them before 2019 or even before SB61 took effect in 2020. And although that seems like a minimal difference, it is actually very important in terms of looking at what the core Second Amendment right is. Heller tells us, and this court's precedents have explained, that the Second Amendment core right is that of law-abiding, responsible citizens to use arms in defense of hearth and home. And so the core right there is use and possession, which is still available to 18 to 20-year-olds here, even if one subset of semiautomatic weapons may be harder to procure. And in addition, I would also note that… Hold on. One subset. You say it as if we should consider all these as alternatives. It seems to me the Second Amendment applies to each gun specifically. Are you suggesting that because handguns and long guns are more available, that therefore they have less right to own or purchase a semiautomatic centerfire rifle? I don't think that that is the point that I'm making. My point is that there are other types of semiautomatic weapons, including other types of semiautomatic long guns, that are available to this group. The available long guns to an 18 to 20-year-old who doesn't qualify for an exemption and cannot procure a semiautomatic centerfire rifle through a parent or other lawful source, they still have access to semiautomatic rimfire rifles. They still have access to single-shot shotguns. But in addition, they also have access to other types of rifles which are not single-shot and that may have higher caliber ammunition that could be used with them, including bolt-action, lever-action, and pump-action rifles. If you look at empirical evidence, 99.9, maybe more than that, percent of mass shootings are committed by men. Some young, some old. One thing constant is it's almost always men who commit mass shootings. Could California then pass a law saying men cannot own semiautomatic centerfire rifles and handguns because of the empirical evidence? You know, we can stop mass shootings, according to the government, if we ban men from using such weapons. And the law would have similar exceptions like it has here that members of law enforcement or military, they can own a long-arms hunting license, et cetera. Assume that you have similar exceptions. But that law passed a constitutional muster. It's hard to imagine a circumstance in which the legislature would actually pass a law like that. And I think it's important to know... I think you underestimate politicians. So I think if you want to look at empirical evidence, they can't be stronger than 99.9% of mass shootings committed by men. It doesn't take a stretch of the imagination for a politician to say we can end mass shootings altogether if we prevent men from owning handguns and semiautomatic rifles. I think a main difference is that gender, as opposed to age, is a suspect class. And so in that circumstance, a law might be subject. We apply intermediate scrutiny to gender. And I think the governor's position is this law passes under intermediate scrutiny as well. So why wouldn't it be essentially the same standard? So that may be so, but the court would still have to go through the analysis to determine whether or not there was an appropriate fit and whether too much conduct central to the Second Amendment right was implicated. And again, I don't see a circumstance under which the California legislature would impose that kind of limitation on a long-recognized suspect class. There would be challenges, not just general Second Amendment challenges, but of course there would be equal protection challenges to that as well. So luckily we're not presented with that type of circumstance here. The particular group that we are addressing is 18 to 20-year-olds. And the distinction is that there is no gender involved. Everybody in the 18 to 20-year-old group is equally burdened or not burdened by the law. And also there is the temporary aspect of the law. It may seem like three years might be a lot, but as we saw in this action, even the named plaintiffs here have already aged out of the law and are able to access any firearm that they wish, so long as the procurement of it is otherwise lawful. So the burden is significantly lessened based on the temporal aspect. So let me ask, let's assume we get the intermediate scrutiny and let's assume they're not a suspect class, which I don't think they would be. But still, you just heard, and I think this comports with the evidence I looked up, which is 0.25%, meaning one out of every 400 young adults in this category are committing or arrested for violent crimes at all. I mean, that doesn't even, I mean, some of those aren't even including firearm offenses. Tell me, point me to any case where it passes intermediate scrutiny, where a government prohibits 99.75% of a class that shouldn't be affected by this in order to get at a quarter percent of that class that addresses it. So I can't think of a case off the top of my head that involves those particular percentages, but I will note that this court has even very recently analyzed under intermediate scrutiny complete categorical bans on large swaths of the population. So, for example, in my case, there was evidence that was presented that those who have been involuntarily committed to mental institutions decades ago may no longer be at risk of committing any violent crimes. Okay, I get that, but I see that as totally different, because there you have an individualized determination that was made. Now, yeah, there may be a problem on the back end, but I'd like to see those statistics because I'll bet you that it's, I mean, it's a much higher percentage of people who are still mentally ill that are still being affected. So I don't think that's a particularly good example. I mean, I'll throw one out. I mean, the Supreme Court in Craig v. Boren said that that concerned the difference between men and women, young adults, in being able to drink 3.2% beer, and there was evidence that men were, you know, more strong, that young men were more strongly affected by it, and so they passed the law. And it was struck down by the Supreme Court, saying in that case it was like a 2% correlation between those who were affected, and they said we're having none of this. It's not even close. And now you're talking about ratcheting that down eight times and saying, well, we'd like this one to pass constitutional muster. So I see my time is running low. We'll give you enough. Thank you. You know, I would note that Craig v. Boren, of course, struck down a law that made a distinction between males and females, but it left open the possibility that states could set the age for drinking at whatever level was appropriate for them. It was intermediate scrutiny. I think it's the tailoring that's required in intermediate scrutiny. I mean, I think we get to the same place either way, right? I mean, gender is intermediate scrutiny. Second Amendment, at a minimum, is intermediate, if not strict scrutiny. And so we get to the same analysis. So I don't think the gender part of that distinguishes Craig v. Boren. It's the tailoring. And the facts are the facts, that here, you know, there's eight times fewer harmful people that fall within the restriction than there were in Craig v. Boren, and the Supreme Court said you can't do that. May I respond, Your Honor? Yep. Thank you. So two points there, and the first is that, of course, here, there is not a complete restriction of the ability to access firearms for the core purpose of self-defense. This entire group of 18- to 20-year-olds may still access, as I've said already here today, a large swath of firearms in order to protect themselves, whether that's in the home or outside the home under appropriate circumstances. And in addition, the legislation is not solely, or it's not only to be looked at against the background of how many people commit the crimes, but also there is substantial evidence in the record that from 2014 forward or even as far back as the 1990s when the NRA case was examining, excuse me, when the period of time in the 1960s going forward that the NRA case examined in looking at the federal handgun ban, this age group has been consistently disproportionate, has consisted of a disproportionate number or percentage of crimes, particularly violent crimes. And that persists today that the age group of 18, 19, and 20 still commits the highest number of homicides. Your point is, and the statistics apparently bear this out under some analysis, that 18- to 20-year-olds are four times more likely than an older age group to commit a violent crime. But that doesn't address the question of what the actual numbers are. I mean, part of the problem with that is the same analysis holds true for 21- to 25-year-olds. They're also three to four times more likely than someone who's over 30. So, I mean, it's a very slippery slope where you're going, and I don't think that's the helpful analysis. I don't see that as satisfying intermediate scrutiny. The question is, can you ban an entire portion, segment of society, I mean, you know, based on 0.25% of the actions of that group? So may I respond quickly, Your Honor? Yeah, no, we'll give you as much time to answer the question. Thank you. I just would again emphasize that there is no ban on this age group having access to firearms if they take a hunter education course, which involves a safe handling component of it, which involves at least in non-pandemic times an in-person course of four hours. If they are able to take that course and if they're able to pass the test, they can procure a hunting license and they can walk into any licensed firearms dealer and purchase any long gun that is not a semi-automatic centerfire rifle. And within three or fewer years, they will be able to purchase any firearm of their choosing so long as they remain otherwise lawfully able to purchase firearms. Are there other questions from the panel? I've got one additional question. With respect to the Reconstruction Era laws limiting gun ownership or firearms ownership, can we rely on them if we believe that they're inconsistent with the Founding Era understanding of the Second Amendment? So your question is whether if you already believe that they are inconsistent with the Founding Era, could you rely on them? If you determine that they are inconsistent with the Founding Era, then you might discount their persuasiveness here. However, as Heller tells us, this era of laws may provide insight into the views of the founders and they may provide insight into what was commonly understood as the scope of a right. So we believe, as we've stated in our briefs, and as Amiki has stated as well, that the 19th century laws and even extending up into the early 20th century provide a lens through which the court can see that 18- to 20-year-olds who were considered minors from the founding or even before the founding all the way up through 1971 or 72 did not have the full panoply of rights, were considered to be under the authority of their parents who generally would have provided for them and indeed in many malicious statutes of the colonies and even beyond were the ones who were providing the firearms to them and who could be punished if the 18- to 20-year-olds did not show up for their malicious service. These laws may provide the court with an understanding of the original public meaning of the Second Amendment and its application to this particular age group. Can I just ask one more question about the Reconstruction era? The Fifth Circuit case obviously addressed handguns and it said there's 22 states that had put restrictions on 18- to 20-year-olds. When you go and pull those up, more than half of those are specifically limited to pistols and handguns. So the vast majority of those examples don't apply to long guns. In fact, the handful of examples that may arguably include handguns, they not only prohibited pistols but also other dangerous or in some cases it was other deadly weapons but at least one of those states defined dangerous weapons. They specifically excluded long guns from the definition of dangerous weapons. Do you have any knowledge of what dangerous or deadly weapons as used in some of these statutes meant and whether it included long guns or not? I haven't done a close analysis of that particular term and whether it would also encompass long guns. But I would note that those laws were directed towards ensuring public safety and in that time, concealable weapons... But I agree with that. A part of the public safety seemed to be a recognition that handguns were far more dangerous than long guns. And so, I mean, if we're going to consider this, it seems like that part of the analysis, would you agree, needs to be considered as well? That may be considered, certainly. But as the record shows, the legislature considered when it passed these amendments to section 27.5.10 that although historically most violent crime had been conducted with handguns, there was a rise in the conduct of violent crimes with long guns. So the legislature was addressing the particular public safety... Yeah, but that doesn't seem to have a historical analog. I give you that from a policy perspective. But from a historical analog, that doesn't seem particularly relevant. Well, I think that this court's precedents have told us that there doesn't have to be an exact historical analog in order for a law to pass muster. And in any case, again, even if the court were to decide that a core Second Amendment right exists for 18 to 20-year-olds generally and if it proceeded to step two, the fact that a large swath of firearms are still available for that core right of self-defense means that consistent with every federal court who have considered the question, this district court made an appropriate choice in determining that this law would pass intermediate scrutiny. And at this point, in the case where we are at preliminary injunction and where discovery is proceeding apace below, there may be further evidence presented by the parties as the case goes forward. And that may reveal answers to your Honor's questions. But at least on this record, where this court doesn't proceed to reweigh all of the evidence, we don't see that there is anything within the district court's reasoning in following all of these other federal court precedents and analyzing all of the historical information and data considered by those courts. We don't see an abuse of discretion that would warrant reversal of the denial of preliminary injunction here. Thank you, Counsel, for your argument. Ms. Proctor, we've let them go over. We'll give you eight minutes and see where we get to. Thank you, Your Honor. The Supreme Court held in Hallard that in determining the scope of the Second Amendment rights, it is critical for the court to conduct a careful historical inquiry. And this court reaffirmed that recently in its en banc decision in Young. This is not a situation where the historical evidence is complicated or ambiguous. You have on the one hand statutes contemporaneous with the ratification of the Second Amendment that uniformly show that 18- to 20-year-olds were part of the militia. Those statutes tell us who the Second Amendment must, at a minimum, protect if it is to serve its stated purpose of preventing an elimination of the militia. Against those precedents, there is no ratification-era analog for restricting age-based restrictions on acquiring firearms. Can I ask you, I tend to agree with, I mean, I don't speak for the panel, but it seems pretty clear that that is accurate. What I'm troubled with, and tell the argument, I haven't appreciated this, that there may be parental gift options even for semi-automatic centerfire rifles. And tell me, address that argument. Is that enough? I mean, we have the Horsley case that addressed a parental consent rule and it had some other exemptions to it. Why wouldn't that be enough here to pass intermediate scrutiny? Well, let me just back up one step in that, which is to say that we don't even agree that the parental, if it is true that semi-automatic centerfire rifles may be gifted by family members, we still believe that the court should be applying strict scrutiny here. No, that's a fair point. I didn't mean to jump to intermediate. I realize I fall into the same trap that most of the courts do and they ignore that first section. But why isn't that, well, let's just say it this way, in Horsley that was enough to save the law, allow it to pass constitutional muster. The parental consent, why is a parental transfer option, if it exists, not enough here? Well, and Horsley of course is not binding on this court and it is subject to the same historical problems that we have highlighted in our brief. And so I don't think that the court's judgment that the parental consent is enough is even persuasive here. However, to the point that you made with Ms. Rosenberg, there were alternative avenues open to adults over the age of 18, under the age of 21 who could not get parental consent that aren't available here. So there are, it seems beyond question that this is a substantial burden on a young adult's ability to acquire a whole category of firearms, semi-automatic centerfire rifles. And as you pointed out, Your Honor, the Second Amendment applies to all arms. It's not valid under Heller for the state to say, well, there are 18-year-olds who can't get semi-automatic centerfire rifles from their parents, can get other types of long guns by obtaining a hunting license. The court looks at what is taken away from these individuals and it is an entire category of firearms. All right, well, let me ask about that. There's been a lot of talk here about possession. Do you agree that possession is not invoked by either of the bills here that are right issue? In other words, it's purchases, it's not possession. Do you agree with that? I do agree with that, Your Honor, but I don't think that that changes the court's analysis for two reasons. The first is that this court has recognized that the right to acquire arms is at the core of the Second Amendment. And so as long as the ability to purchase arms is substantially burdened, strict scrutiny still applies. But secondly, there are no meaningful avenues to obtain these arms, to possess them. There are no meaningful avenues what? Well, the reason for the court's analysis that acquiring arms is part of the core of the right is that if you don't have a means to acquire the arms, the ability to possess those arms is not meaningful. Well, I understand, but this law provides a number of avenues that have been discussed at length. We could say, you know, they're not meaningful or they are meaningful, but the law itself provides several means of people, of young adults, 18 to 20, acquiring these arms, either prior possession or gifts or being in the armed services or being a lawful peace officer, etc. Correct? Your Honor, you're correct that those exceptions exist in the law. But under Patel, the relevant group for the court's analysis is the group that is restricted from acquiring these arms. So I don't think that the law enforcement and the military exceptions are really even within the court's consideration here. Your average law-abiding 18 to 20-year-old can only acquire long arms by getting a hunting license or through a transfer that essentially requires parental consent. It's tantamount to parental consent. Well, traditionally, traditionally, even going back to your founding point, that is the founding era point, there are significant categories of people who are not within Second Amendment protections. Fennelly ill, felons, I think. I'm not sure about that actually, but there are other categories that are not protected. Correct?  One is people who are deprived of their arms based on an individualized determination. I would put the mentally ill and felons within that category. Those individuals aren't deprived of their Second Amendment rights based on broad generalizations about the characteristics of members of those groups. There are rights, I'm sorry, there are laws that disarm people based on broad generalizations about the characteristics of the groups, such as laws that prohibited slaves or Native Americans or free blacks from acquiring arms, and I just don't think that those are valid precedents for the Court's consideration for obvious reasons. And I would also like to make a point about the founding era analogs to clarify some things that I said in my first speech in response to a question by Judge Nelson. You asked whether or not there is a historical tradition of requiring training, and I just want to be clear that we are not acknowledging that there is such a historical tradition. There's no question that there were laws requiring members of the militia to engage in firearms training, but there is absolutely no evidence that that training was a condition to anyone's ability to acquire a firearm. I understand that, but the time is running. Let me just ask a loaded question, all right? Assume, for these purposes, that this law does not invade the right to possess firearms for 18 to 20-year-olds. I understand your position that, effectively, it might because of the limited nature of the exceptions. I don't think I accept that, but for these purposes, I will. Assume there's a right to possession for 18 to 20-year-olds of long arms, long guns. How close are these restrictions on purchasing for 18 to 20-year-olds come to invading the right to defend hearth and home, which I think everyone agrees is the core of the Second Amendment. Your Honor, I believe that the Court has resolved this question in Jackson and Teixeira when the Court acknowledged that a necessary prerequisite to being able to keep in their arms and defense a hearth and home is that one be able to acquire a firearm. All right, but once again, you're slipping away from my assumption that there is possession here. That's okay because your argument is, well, if there are difficulties in acquiring, that obviously impedes the right to possession. I think that's your answer to my question. Is that right? That's correct, Your Honor. Now deal with the invasion of hearth and home. Is that your answer to the invasion of hearth and home? That is, to the extent you limit the ability to purchase long guns, you don't have the right to possess them, and that's your invasion of the central core of the Second Amendment. Is that where you are? That's exactly right. Without possessing them, you are not able to use them in defense of hearth and home. And, Your Honor, even if you believe that this exists outside of the core of the Second Amendment, heightened scrutiny still applies, and I think that Judge Lee's hypothetical perfectly illustrates why the state is unable to satisfy heightened scrutiny, either with the hunting license requirement or with the ban on the semi-automatic centerfire rifle. Judge Lee's hypothetical would be a better fit. It would be more narrowly tailored, but it's quite obvious to anyone here that it would be unconstitutional. It would not pass muster under Craig v. Boran, under intermediate scrutiny, and the same is true here. When you talk about heightened scrutiny, are you talking indeed about intermediate scrutiny or strict scrutiny? Your Honor, in that context, in that answer, I was talking about intermediate scrutiny. Craig v. Boran is an intermediate scrutiny case. McCohen is an intermediate scrutiny case. And those cases show us that when a state burdens significantly more conduct than is necessary to achieve its ends, and in this case it's 99.75% of young adults who haven't shown these violent propensities, the state is unable to satisfy intermediate scrutiny. Thank you. Any further questions from the panel? Okay. Ms. Proctor, Ms. Rosenberg, thank you very much for your excellent arguments today. I also want to thank you for your supplemental briefing. I know we didn't address it at oral argument, but rest assured we've read it and considered it, and it was helpful to the Court. So thank you, and this panel of the Ninth Circuit is now adjourned.
judges: Stein, Nelson, Lee